UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:16-cv-00351-MOC

| | |
|---|---|
| **EDWARD KELLY HOPSON,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| Vs. ) | ORDER |
| ) | |
| **NANCY A. BERRYHILL,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the court on plaintiff's (#15) and defendant's (#22) cross Motions for Summary Judgment. The matter is ripe for review. Having carefully considered each motion and reviewed the pleadings, the court enters the following findings and Order.

## FINDINGS AND CONCLUSIONS

**I.  Administrative History**

In August 2010, plaintiff filed an application for a Period of Disability and Disability Insurance Benefits ("DIB"), alleging a disability that commenced on July 23, 2010. (Tr. 126). Plaintiff's claim was denied initially and upon reconsideration, and on February 1, 2012, Administrative Law Judge Charles R. Howard ("the ALJ") issued a written decision denying plaintiff's claim on the basis that he was not disabled within the meaning of the Act. (Tr. 13, 126). On June 25, 2012, the Appeals Council dismissed plaintiff's request for review as untimely. (Tr. 143-44).

On February 16, 2012, plaintiff filed another application for a Period of Disability and DIB, alleging disability since July 23, 2010. (Tr. 183). The claim was denied initially and upon

-1-

reconsideration. (Tr. 183). The ALJ denied the claim in a decision issued on December 12, 2013 (Tr. 183-95). On April 9, 2015, the Appeals Council remanded the case to the ALJ for further proceedings. (Tr. 200-02). On remand, a hearing was held before the ALJ on August 27, 2015. (Tr. 13, 32-47). On September 14, 2015, the ALJ issued a decision denying the claim. (Tr. 13-25). On August 25, 2016, the Appeals Council denied review, thereby rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-3). Plaintiff timely commenced the instant action for judicial review, pursuant to 42 U.S.C. § 405(g).

## II. Factual Background

The court adopts and incorporates the ALJ's factual findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III. Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not *de novo*, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra.

Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. Hays v. Sullivan, supra. The Fourth Circuit has explained substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the

reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

## IV. Substantial Evidence

### A. Introduction

The court has read the transcript of plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the relevant exhibits contained in the extensive administrative record. The issue is not whether a court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. Here, the court finds that the ALJ's decision was supported by substantial evidence, and it will thus be affirmed.

### B. Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title XVI pursuant to the following five-step analysis:

a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b. An individual who does not have a "severe impairment" will not be found to be disabled;

c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d. If, upon determining residual functional capacity ("RFC"), the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 416.920(a)-(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id.

**C. The Administrative Decision**

At step one of the sequential evaluation, the ALJ found that plaintiff had not engaged in substantial gainful activity ("SGA") at any time from February 2, 2012 through September 30, 2013, which is the period at issue. (Tr. 16). At step two, the ALJ found that plaintiff had the following severe, medically determinable impairments: status-post right foot fracture with subsequent surgery, hepatitis C, obesity, degenerative joint disease, affective disorder, anxiety-related disorder, and borderline intellectual functioning. (Tr. 16). The ALJ specifically found that plaintiff's alleged hypertension, pancreatic cysts, cut ligaments in the right hand, back pain, and

history of alcoholism and substance abuse were non-severe impairments within the meaning of the regulations. (Tr. 16). At step three, the ALJ found that none of plaintiff's impairments, or any combination thereof, met or equaled one of the conditions in the Listing. (Tr. 17-18).

Then, before step four and upon review of the record, the ALJ determined that plaintiff had the RFC to perform light work, with the following limitations: no climbing, crouching, or crawling; no more than occasional balancing, stooping, or kneeling; mentally, plaintiff can perform and maintain concentration for simple, routine, repetitive tasks for two-hour segments; adapt to gradual and infrequent changes in the work setting; and limited to work requiring no public interaction and no more than occasional interaction with coworkers and supervisors. (Tr. 19). Based on this RFC assessment, the ALJ determined at step four that plaintiff was not able to perform his past relevant work as a construction laborer. (Tr. 24). However, at step five, after hearing vocational expert testimony and considering plaintiff's age, education, work experience, and RFC, the ALJ found that plaintiff could perform other work existing in significant numbers in the national economy, including bench worker, sorter, and cloth folder. (Tr. 24-25, 45-46). Such finding ended the sequential evaluation, with the ALJ finding that plaintiff was not disabled within the meaning of the Act during the period at issue. (Tr. 14, 25).

### D. Discussion

The court has closely read plaintiff's Amended Memorandum of Law (#19) supporting his Motion for Summary Judgment (#15). Plaintiff argues that the ALJ erred twice: first, that the ALJ failed to properly assess plaintiff's non-exertional impairments and thus failed to develop the record sufficiently; and second, that the ALJ committed error in his evaluation of the vocational expert's testimony. The court will address each argument below.

### 1. The ALJ's assessment of plaintiff's non-exertional impairments

Plaintiff argues that his non-exertional ailments, specifically his mental impairments, are of Listing-level severity. Plaintiff cites the evaluation of Dr. Donald Salmon and the testimony of plaintiff's girlfriend. Further, plaintiff argues that the ALJ failed to fully develop the record on this matter by refusing to order a consultative examination for intellectual testing of the plaintiff.

Here, the court finds that the ALJ properly developed the record and assessed plaintiff's mental impairments. Again, at this stage a reviewing court does not reevaluate or search the administrative record for evidence; the court is to determine whether the ALJ's findings are supported by referenced substantial evidence and whether the ALJ has shown their work in doing so. Radford, 734 F.3d at 295; Patterson v. Comm'r of Soc. Sec. Admin., 846 F.3d 656, 663 (4th Cir. 2017). The ALJ has clearly done so here.

First, the ALJ followed the Regulations in considering whether plaintiff met any of the Listings and evaluated plaintiff's claim under the required "paragraph B" criteria. The ALJ noted in his opinion that to satisfy paragraph B, plaintiff must have mental impairments that result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. (Tr. 17). The ALJ did not find marked difficulties in any of these areas or that plaintiff had experienced repeated episodes of decompensation. (Tr. 17-18). Importantly, the ALJ showed his work, and at every step explained exactly what evidence supported his findings that plaintiff did not have marked difficulties. For example, when analyzing plaintiff's activities of daily living, the ALJ took note of how plaintiff did not prepare meals or perform housework. However, the ALJ also noted that plaintiff reported

he showers and dresses in regular clothes each day, watches television, washes dishes, brushes the dog, talks on the phone, and so on. For these reasons, the ALJ concluded that plaintiff was limited by moderate restrictions rather than suffering from marked difficulty. (Tr. 17). The ALJ provided similar analysis of the evidence for every element of the paragraph B criteria. (Tr. 17-18). As a result, the court had no trouble following the ALJ's chain of reasoning in the evaluation of plaintiff's mental impairments, and finds that substantial cited evidence did support the ALJ's findings at every step along the way.

Further, the ALJ addressed the very evidence that plaintiff asserts as proof of a Listing-level mental incapacity. Specifically, the ALJ found that Dr. Salmon's evaluation relies too heavily on the subjective reports of symptoms and limitations provided by plaintiff and his girlfriend. As to Dr. Salmon's finding that plaintiff had two episodes of decompensation, the ALJ concluded that no evidence existed that such events occurred. In conjunction with plaintiff's benign clinical presentations and conservative treatment, the ALJ found Dr. Salmon's opinion inconsistent with the rest of the record. The same holds true for statements of plaintiff's girlfriend, as the ALJ found her statements were not supported by the rest of the record. (Tr. 23-24). Again, the ALJ explained his reasoning and provided substantial cited evidence from the record. Thus the court thus finds no basis for sustaining the plaintiff's assignment of error.

As for plaintiff's contention that the record was insufficiently developed, the court does not agree. Plaintiff argues that failure to order a consultative examination on plaintiff's mental capabilities has left the record undeveloped. However, the record contains an evaluation that included intellectual testing that the ALJ considered in formulating his opinion. (Tr. 21, 766). As a result, the court cannot agree that the record was insufficiently developed, as the examination of

the record contained the intellectual testing advocated by plaintiff, making another round of testing redundant. Thus, the court finds that the ALJ properly considered plaintiff's mental impairments, his findings were supported by substantial evidence, and that the record was properly developed.

### 2. The ALJ's evaluation of vocational testimony

Plaintiff also argues that the ALJ committed prejudicial error in his evaluation of vocational testimony by failing to fully include the plaintiff's mental limitations in the hypotheticals that the ALJ posed to a vocational expert. The court disagrees.

The ALJ is solely responsible for determining the Residual Functional Capacity (hereinafter "RFC") of a claimant. 20 C.F.R. § 404.1546(c). In determining RFC, the ALJ must consider the functional limitations and restrictions resulting from the claimant's medically determinable impairments. S.S.R. 96-8p. Inasmuch as RFC is determined at the fourth step of the sequential evaluation process, the burden is on the claimant to establish that he or she suffers from a physical or mental impairment which limits functional capacity. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

Here, the ALJ posed alternative hypotheticals to the vocational expert. While one hypothetical included the mental limitations assigned by Dr. Salmon and Ms. Nodell, the ALJ asked the VE to disregard those limitations in an alternative hypothetical. With the latter hypothetical, the vocational expert testified that plaintiff would be able to work jobs such as bench worker, sorter, or cloth folder; however, with the former hypothetical, the expert testified that plaintiff would be unemployable. Thus, there was nothing inherently wrong with either hypothetical – what plaintiff is challenging is the ALJs decision not to include the mental limitations assigned by Dr. Salmon and Ms. Nodell in the RFC. This challenge has already been

considered, supra.

In general, hypothetical questions posed by an ALJ to a vocational expert must fully describe a plaintiff's impairments and accurately set forth the extent and duration of the claimant's pain, if any. Cornett v. Califano, 590 F.2d 91 (4th Cir. 1978). Where the ALJ properly formulates the hypothetical to accurately reflect the condition and limitations of the claimant, the ALJ is entitled to afford the opinion of the vocational expert great weight. Shively v. Heckler, 739 F.2d 984 (4th Cir. 1984). Because plaintiff's conditions and limitations were accurately portrayed to the vocational expert in the hypothetical ultimately relied upon, the ALJ did not fail to consider all the evidence, and his reliance on the opinion of the vocational expert that jobs were available to a person with plaintiff's limitations was proper.

**E. Conclusion**

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, plaintiff's complaint, the Commissioner and plaintiff's cross Motions for Summary Judgment, and accompanying memoranda. Review of the entire record reveals that the decision of the ALJ was supported by substantial evidence and is thus valid. See Richardson v. Perales, supra; Hays v. Sullivan, supra. As this court finds that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra at 401, plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

**ORDER**

**IT IS, THEREFORE, ORDERED** that plaintiff's Motion for Summary Judgment (#15) is **DENIED,** defendant's Motion for Summary Judgment (#22) is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

Signed: November 22, 2017

Max O. Cogburn Jr.
United States District Judge